NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                        :
Cynthia BERRY                           :
                                        :
    Plaintiff,                          :      Civil No. 07-2284 (AET)
                                        :
    v.                                  :      **OPINION**
                                        :
NEW JERSEY STATE PRISON and             :
CORRECTIONAL MEDICAL SERVICES,          :
                                        :
    Defendants.                         :
_____:

THOMPSON, U.S.D.J.

    This matter has come before the Court upon Defendant Correctional Medical Services, Inc.'s ("CMS") Motion for Summary Judgment [docket # 92]. The Court has decided this motion after taking into consideration the submissions of all parties, without oral argument, pursuant to Fed. R. Civ. P. 78(b).[1] For the reasons set forth below, CMS's motion is granted.

**I.    Background**

    Plaintiff Cynthia Berry, who is proceeding *pro se*, was employed as a dental technician by CMS starting in April 2005. CMS provided medical and dental care for inmates housed in the New Jersey State Prison ("NJSP") under a contract with the New Jersey Department of Corrections ("DOC"). Soon after beginning her employment with CMS, CMS assigned Plaintiff to work at the NJSP.

    Plaintiff's Complaint [docket # 1] alleges that in May 2005, a corrections officer

---

[1] Plaintiff has not filed a response to CMS's Motion for Summary Judgment. The Court has taken into consideration, however, Plaintiffs previous submissions and letters.

employed by NJSP sexually assaulted her. Plaintiff filed a complaint with the DOC's Equal Employment Division, which investigated Plaintiff's claims and ultimately concluded that Plaintiff's allegations were unsubstantiated.

In August 2005, Mari Knight took over as CMS's Health Services Administrator at the NJSP and in that position supervised Plaintiff. Plaintiff alleges that after Knight's arrival, she was reprimanded on several occasions—specifically, on October 20, October 27, November 29, and December 28, 2006 and January 17, 2007—and that the corrections officers harassed her by intentionally delaying her movement through the prison.[2] Plaintiff alleges that this conduct was retaliation for the filing of her complaint with the DOC in May 2005.[3]

In May 2006, Plaintiff took a medical leave of absence, which she alleges was necessary because she could not tolerate the treatment she was receiving at NJSP. After Plaintiff exhausted her Family and Medical Leave Act leave and did not return to work, CMS terminated her employment in August 2006.

**II.   Analysis**

    1.   Legal Standard

Summary judgment is appropriate if, on the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2]Plaintiff's Complaint alludes to other unspecified instances of verbal harassment by Knight and other "subtle harassment by the Corrections officers. (Compl. 2.) However, in accord with this Court's earlier order, the Court will limit its consideration to the five written and verbal reprimands and the alleged delay of movement. (9/8/09 Order 2 n.1 [docket # 85].)

[3]Plaintiff also originally raised claims of discrimination on the basis of race and gender under Title VII. The Court previously granted motions for summary judgment on those claims. (9/8/09 Order.)

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment should be granted, the Court considers the facts drawn from the "pleadings, the discovery and disclosure materials on file, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). To survive a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party that will bear the burden of proof at trial "must make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. This requires more than the "mere existence of a scintilla of evidence" supporting the non-moving party. *Anderson*, 477 U.S. at 252.

Because Plaintiff has offered no direct evidence of retaliatory intent, she must prove a prima facie case under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), framework. Plaintiff must prove that: (1) she engaged in protected activity under Title VII; (2) the employer took an adverse action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action. *Wilkerson v. New Media Tech. Charter School, Inc.*, 522 F.3d 315, 320 (3d Cir. 2008). In addition, Plaintiff must show that the adverse action was "materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 53 (2006); *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). If Plaintiff establishes a prima facie case, the burden shifts to CMS to advance a legitimate, non-retaliatory reason for Knight's and the corrections officers' conduct. *Moore*, 461 F.3d at 342. Plaintiff then has the burden of proving that CMS's proffered explanation is false or a pretext,

and that retaliation was the real reason for the adverse employment action. *Id.*

### 2. Corrections Officers' Actions

Plaintiff argues that the corrections officers harassed her by delaying her movements through the NJSP. Such activity is not "materially adverse." The corrections officers' actions are not alleged to have resulted in any economic loss to Plaintiff, changed the terms of her employment, or impacted her professional advancement or career.[4] *See Morrison v. Carpenter Technology Corp.*, 193 Fed. Appx. 148, 154 (3d Cir. 2006). The Court finds that these alleged delays would not dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington*, 548 U.S. at 67-68. This is particularly true in these circumstances as workers at the NJSP frequently must deal with delays in movement because of unanticipated lockdowns or other security considerations. (Sova Cert. Ex. A, 65:11-65:24 [docket # 92].) "Petty slights or minor annoyances that often take place at work and that all employees experience" do not constitute materially adverse retaliatory actions. *Burlington*, 548 U.S. at 68.

### 3. Causal Connection Between Protected Activity and Reprimands

There is no question that Plaintiff's filing of a complaint with the DOC was protected activity. However, Plaintiff must establish that there was a causal connection between the protected activity and the alleged retaliatory actions. *Wilkerson*, 522 F.3d at 320. To establish causation, a plaintiff usually must prove that there was temporal proximity between the protected

---

[4]One of the allegedly retaliatory reprimands was for "excessive tardiness," which included seven days where Plaintiff was fifteen minutes to work. It could be inferred that these delays were the result of the corrections officers' delaying actions. However, the reprimand also noted that Plaintiff had been late on two other instances—once by an hour and forty-five minutes, and once by two hours—that are not alleged to have been the result of the correction officers' actions.

activity and the retaliatory conduct, although a lack of suggestive timing is not dispositive if there was a pattern of intervening antagonism or some other evidence establishing a causal link. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). Knight's first allegedly retaliatory reprimand of Plaintiff occurred on October 20, 2005, more than five months after Plaintiff's complaint to the DOC.[5] (Sova Cert., Ex. I.) A five month time lag is not so "unusually suggestive" that temporal proximity alone creates a presumption of causation. *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 760 (3d Cir. 2004) (no inference of causation when there was two months between protected activity and alleged retaliation).

Because timing alone cannot raise an inference of causation, Plaintiff must provide some other evidence of a causal connection. *Farrell*, 206 F.3d at 285. Here, Plaintiff has explicitly alleged that during the DOC investigation she was ostracized by co-workers and suffered daily harassment from corrections officers. (Pl.'s Opp. to Mots. for Summ J. ¶ 5 [docket # 73].) In addition, Plaintiff alleges that since Knight's arrival at NJSP she has been screamed at and treated in a negative manner. (Compl. 2.) Taking all inferences in favor of the non-moving party, the Court finds that a reasonable jury could find that there was a pattern of intervening antagonism suggesting a causal connection between the protected activity and the alleged retaliation.

        3.     <u>CMS's Legitimate Non-Retaliatory Reasons for Reprimands</u>

Assuming, therefore, that a genuine issue of material fact remains as to whether Plaintiff

---

[5]The Court notes that Plaintiff also received verbal counseling on June 22, 2005 and July 6, 2005. However, these reprimands have not been alleged to be retaliatory.

can make out a prima facie case of retaliation, the Court will move on to consider the evidence submitted by CMS regarding the legitimate, non-retaliatory reasons for the five oral and verbal reprimands Plaintiff received from Knight. CMS contends that each of the five reprimands occurred because of Plaintiff's inappropriate conduct—specifically, "yelling in the hallway," being "loud and not responsive to [] instructions," "loudly complaining," being "disrespectful," calling out of work at the last minute, and "excessive tardiness." (Sova Cert., Ex. I, K-N.)

Plaintiff has admitted that on October 20, 2005 she "raised [her] voice a little" when asked to perform a certain task. Further, Plaintiff acknowledges getting into the dispute with Mr. Lee that was the subject of the written counseling received on January 11, 2006 and that during that dispute she was "talking loudly." (Sova Cert., Ex. A, 140:22-141:6.) Further, Plaintiff has admitted that she frequently arrived late to work.

Plaintiff has not provided any evidence to suggest that CMS's explanation is false or a pretense. In fact, Plaintiff has admitted that she has no evidence that these reprimands were due to any other reason other than those asserted by CMS. (Id. at 113:16-114:4, 134:22-136:17, 139:5-10.) Several other CMS employees—whose actions Plaintiff has not alleged were retaliatory—raised concerns about Plaintiff's interactions with Knight, problems with her work performance, attendance and tardiness. (Sova Cert., Ex. A, 126:1-126:11, 159:23-160:1; Sova Cert., Ex. O & P.) In addition, Plaintiff was reprimanded on at least two occasion by Knight's predecessor for problems including a failure to report for duty on time and calling out from work at the last minute.[6] (Sova Cert., Ex. G & H.) Thus, the Court concludes that CMS has shown, as

---

[6] These reprimands occurred subsequent to the filing of Plaintiff's complaint with the DOC, but are not alleged to have been retaliatory.

a matter of law, that it had legitimate non-retaliatory reasons for the written and verbal reprimands in question. For the foregoing reasons, Defendant CMS's Motion for Summary Judgment [docket # 92] is granted. An order implementing the Court's opinion will follow.

                                                    s/ Anne E. Thompson
                                                    ANNE E. THOMPSON, U.S.D.J.

DATED:      December 9, 2009